# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| REGINALD COLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:10-CV-327 |
| | ) |
| OFFICER D. TINSLEY, | ) |
| OFFICER T. HUGHES, and | ) |
| OFFICER D. ROYSE (FORT WAYNE | ) |
| CITY POLICE OFFICERS), | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court[1] on the fully-briefed motions *in limine* filed by the Plaintiff, Reginald Coleman (Docket # 40), and the Defendants, Officers David Tinsley, Timothy Hughes, and Daniel Royse (collectively, "the Officers) (Docket # 28). For the reasons provided, the parties' respective motions *in limine* will be GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Reginald Coleman is suing the Defendants, Fort Wayne Police Department (FWPD) Officers Tinsley, Hughes, and Royse, under 42 U.S.C. § 1983. Coleman's claims arise out of the events that occurred on September 20, 2008, when the Defendants were dispatched to an address in Fort Wayne to investigate a gun threat complaint, where they subsequently encountered Coleman, arrested him, and transported him to the Allen County Jail. Coleman contends that Officers Tinsley, Hughes, and Royse violated his Fourth Amendment rights by using excessive force on him during the course of his arrest on September 20, 2008, and that

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 13.)

Officer Royse further used excessive force against him later that same night at the Allen County Jail. Coleman also alleges that the Officers are liable to him for failing to intervene to stop the excessive force used at the scene of his arrest on September 20, 2008.

## II. NATURE OF AN ORDER *IN LIMINE*

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part) (citation omitted). "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion *in limine* is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial"). In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion *in limine* is not a final ruling on the admissibility of the evidence that is the subject of the motion, *see Wilson*, 182 F.3d at 570-71; rather, an order on a motion *in limine* is essentially an advisory opinion, "merely speculative in effect," *id.* (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

2

### III. COLEMAN'S MOTION *IN LIMINE*

*A. Unopposed Portions of Coleman's Motion* in Limine *(Nos. 5, 7-11)*

Defendants do not object to Coleman's effort to preclude references or allusions to FWPD protocol or standard operating procedures; the recovery of a knife under the seat of Coleman's car after his arrest; attorney's fees; settlement negotiations; tax considerations; or "send a message" arguments in closing or opening statements. As such, the Plaintiff's motion is GRANTED as to these matters.

*B. Narrative Reports (No. 1)*

Coleman seeks to exclude any narrative reports by Officers Tinsley, Hughes, and Royse or any other officers who may testify, arguing that they are biased, prejudicial, and constitute inadmissible hearsay. (Pl.'s Mot. in Limine 1-2.) Defendants counter that the narrative reports are admissible under Federal Rule of Evidence 803(8) as public records and reports and that some of the witness statements contained in these reports may fall under Rule 803(2), the excited utterance exception to the hearsay rule. (Defs.' Resp. 2-3.) Defendants further argue that the narrative reports may be used to refresh an officer's recollection under Rule 803(5) and that police reports are not "inherently unreliable and inadmissible" as Coleman alleges. (Defs.' Resp. 3-4.)

At this juncture, Coleman's motion *in limine* is GRANTED with respect to this evidence. Presumably, any narrative reports may ultimately be admissible, at least in part, under Federal Rule of Evidence 803(8), although certain hearsay statements within the reports may need to be redacted. Without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained. Counsel are directed to confer in an effort to reach a stipulation concerning suitable redactions. Moreover,

until Defendants have laid a proper foundation, they may not use the document to refresh their recollection or read the document into evidence under Rule 803(5).

### C. The Criminal Charges Brought Against Coleman (No. 2)

While Coleman originally sought to preclude evidence that a public intoxication charge was brought against him as a result of his arrest on September 20, 2008, he subsequently withdrew his motion *in limine* with regard to this evidence. (Pl.'s Reply 2.) Coleman, however, asks that the Court issue a limiting instruction, telling the jury that the existence of the charge is not to be considered on the issue of whether Defendants' force was reasonable. (Pl.'s Reply 2-3.) Moreover, Coleman still maintains that his conviction for public intoxication should be excluded as irrelevant and inadmissible character evidence. Defendants contend that evidence of Coleman's conviction for public intoxication should be presented to the jury because Coleman pled guilty to the public intoxication charge and, as part of his guilty plea, admitted to being under the influence of alcohol at the time the Defendants allegedly used excessive force against him. (Defs.' Resp. 7.) As such, they argue, evidence of Coleman's alcohol consumption is admissible on cross-examination to challenge his perception of the events. (Defs.' Resp. 7.)

Given Coleman's withdrawal of his motion *in limine* regarding his public intoxication charge, Defendants will presumably introduce such evidence at trial. As Coleman requests, however, the Court will issue a limiting instruction informing the jury that it may consider this charge for the limited purpose of assessing Coleman's ability to observe, recall, and recount the events surrounding his arrest and for no other purpose. *See Casares v. Bernal*, 790 F. Supp. 2d 769, 785-86 (N.D. Ill. May 20, 2011) (stating "[w]here there is reason to believe that alcohol . . . impaired a witness's memory of the events to which he is testifying or prevented him from understanding the events at the time they occurred, evidence of his . . . alcohol use is

admissible").

In regard to Coleman's conviction and guilty plea to the public intoxication charge, the Court agrees that its ultimate resolution should not be admitted, at least at this juncture. Significant prejudice or confusion could arise if the jury seeks to retroactively gauge the reasonableness of the Officers' use of force against the knowledge that Coleman was later convicted and pled guilty to the crime for which he was arrested. *See* FED. R. EVID. 403.

Although Defendants maintain that Coleman has denied that he was intoxicated (Defs.' Resp. 6), at this point, without knowing with certainty what Coleman will testify to at trial, Coleman's motion is GRANTED with respect to evidence of his conviction and guilty plea to the public intoxication charge. If Coleman, however, denies being intoxicated or otherwise implies that he was not intoxicated at the time of his arrest, he will have opened the door to such evidence. Consequently, Defendants may then seek to be relieved of this part of the Order at trial.

### D. Coleman's Criminal Record (No. 3)

Coleman also attempts to preclude evidence regarding his criminal record. (Pl.'s Mot. in Limine 2.) In response, Defendants state that they are unaware of any prior felony convictions that would fall under Rule 609(a)(1) and, therefore, do not intend to introduce such evidence. (Defs.' Resp. 7.) As such, Coleman's motion is GRANTED as to this matter.

### E. Coleman's Termination from the FWPD and the Alleged Reasons for the Termination (No. 4)

Coleman further seeks to preclude as irrelevant, and impermissible, evidence concerning his termination from the FWPD in 1992 following accusations of drug use. (Pl.'s Mot. in Limine 3-4.) Defendants agree that this information is irrelevant and should be excluded; however, they contend that if Coleman mentions that he was a former police officer, or that the Officers' actions

5

were in retaliation for his being a former police officer, or anything related to his former position as a Fort Wayne police officer, then Defendants should be permitted to present evidence about his termination and the reasons for it. (Defs.' Resp. 8.) The Court assumes, of course, that the Defendants do not intend to volunteer that Coleman was a former police officer.

Ultimately, the Court agrees with the Defendants. Therefore, Coleman's motion *in limine* is GRANTED with respect to his termination from the FWPD and the alleged reasons for it. Should Coleman open the door, however, by making any reference to his former position as a Fort Wayne police officer, Defendants will be permitted to introduce evidence concerning his termination.

### F. Allegations that Coleman Had Allegedly Threatened Anyone With Or Possessed a Gun on the Night of His Arrest (No. 6)

Coleman also moves to preclude evidence that, prior to making contact with him, the Officers were informed, either by a witness or dispatch, that Coleman had threatened Betty Webb with a gun on the grounds that it is inadmissible hearsay, an alleged prior bad act, and highly inflammatory. (Pl.'s Mot. in Limine 4-5.) Coleman further points to the fact that no firearm was ever recovered from him or the two men arrested with him that night. (Pl.'s Mot. in Limine 4.) Defendants respond that this evidence is admissible because it was the reason they came into contact with Coleman in the first place; they were informed by dispatch that Coleman had threatened Webb with a gun and were dispatched to the area to investigate. (Defs.' Resp. 8.) As such, Defendants argue, this information goes to the Officers' states of mind and what they knew when they came into contact with Coleman, making it relevant and admissible. (Defs.' Resp. 9.) In reply, Coleman contends that, by the time of the second alleged excessive force incident at the Allen County Jail, if not by the time of Coleman's arrest, the Defendants knew that Coleman did

not have a gun. (Pl.'s Reply 4.)

In an excessive force case, the circumstances that matter in a jury's determination of whether an officer's actions were objectively reasonable are "only those circumstances known and information available to the officer at the time of his action." *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988) (en banc). This requires a jury to "stand in the shoes of the officer and judge the reasonableness of his actions based on the information he possessed in responding to that situation." *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011) (citing *Sherrod*, 856 F.2d at 804-05).

Here, the Officers were dispatched on a report that Coleman had threatened Webb with a gun and possessed this knowledge when they responded to the situation. As such, this information is relevant to whether the Officers' actions were objectively reasonable because it was information possessed and available to them at the time of his arrest. *See Common*, 661 F.3d at 943; *Sherrod*, 856 F.2d at 804. Moreover, this information would not constitute hearsay as it is not being used to prove the truth of the matter asserted—that Coleman possessed a gun and threatened Webb with it—but rather to show the effect on the state of mind of the Officers. *See Jewett v. Anders*, 521 F.3d 818, 826 n.5 (7th Cir. 2008) (stating that a description of the plaintiff dispatch provided to an officer was not inadmissible hearsay as it was "offered to demonstrate the effect of this information on [the Officer] as he encountered [the plaintiff] and to explain the Officer's actions in detaining [the plaintiff], not to prove the truth of the matter asserted"); *United States v. Norwood*, 798 F.2d 1094, 1097-98 (7th Cir. 1986) (noting that statements that were offered, not to prove the truth of the matter asserted, but to establish the statements' effects on the listener's state of mind were not hearsay). Accordingly, the allegations that Coleman threatened Webb and possessed a gun, which dispatch communicated to the Officers, are relevant to the

Officers' states of mind when they encountered and arrested Coleman.

Moreover, the probative value of this evidence to the first alleged instance of excessive force is not substantially outweighed by the danger of unfair prejudice to Coleman. *See* FED. R. EVID. 403. This is especially true given that Coleman can show that no gun was actually recovered from him. Therefore, Coleman's motion is DENIED as to this evidence.

## IV. DEFENDANTS' MOTION *IN LIMINE*

### A. *Unopposed Portions of Defendants' Motion* In Limine *(Nos. 1-3, 6-7)*

Coleman does not object to Defendants' effort to preclude references or allusions to any prior or subsequent incidents involving accusations of excessive force against the Defendants or other members of the FWPD; the disciplinary records of the Defendants or other members of the FWPD; other excessive force incidents, claims, or lawsuits; attorney's fees; or any settlement negotiations engaged in by the parties. As such, the Defendants' motion is GRANTED as to these matters.

### B. *Medical Opinions Unless the Physician Who Generated the Reports Is Called to Testify (No. 4)*

Defendants seek to preclude Coleman from introducing into evidence any medical opinions, including, but not limited to, diagnosis, recommended course of treatment, or prognosis, unless the physician who generated the medical record is called as a witness at trial. (Defs.' Mem. in Supp. of Mot. in Limine 6-10.) Coleman counters that he does not anticipate calling any physicians to testify at trial, but, nonetheless, asks the Court to deny this portion of Defendants' motion because it may tend to exclude any testimony regarding the existence, nature, or timing of his injuries, including the testimony of fact witnesses such as Coleman or those who observed his injuries. (Pl.'s Resp. 2.) In reply, Defendants clarify that they do not seek to restrain Coleman

from discussing the symptoms that he experienced at the time of his arrest. (Defs.' Reply 2.)

To the extent that Defendants seek to exclude medical records and any medical opinions contained in them, as Coleman does not intend to call any physicians to testify at trial, Defendants' motion is GRANTED as to these matters.

On the other hand, Coleman will be permitted to testify about what he believes to be his medical health before and after the incident. Coleman's testimony about his mental and physical health and level of pain, fear, and anxiety prior to, during, and after the incident is not an impermissible self-diagnosis. Rather, he would simply be recounting how he personally felt, physically and mentally, which is testimony rationally based on his own perception. FED. R. EVID. 701; *see Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) (allowing plaintiff to describe pain resulting from attack where there is "no . . . complicated question of medical causation"); *United States v. Cravens,* 275 F.3d 637, 640 (7th Cir. 2001) (allowing lay opinion testimony to establish existence of drug or alcohol problem); *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196-98 (3d Cir. 1995) (recognizing lay testimony as to health as "quintessential Rule 701 opinion testimony"); *Holleman v. Duckworth*, 700 F.2d 391, 395 (7th Cir. 1983) (permitting plaintiff's testimony as to his own medical symptoms). Accordingly, Defendants' motion is GRANTED IN PART and DENIED IN PART with respect to this evidence.

### C. Evidence Regarding Causation of Coleman's Injuries Allegedly Resulting from the Incident (No. 5)

Defendants seek to prevent any lay testimony from Coleman or others that "his arrest proximately caused any medical, psychological, or psychiatric condition." (Defs.' Mem. in Supp. of Mot. in Limine 11.) They contend that "[m]atters regarding the causation of a medical,

9

psychological or psychiatric condition require expert testimony." (Defs.' Mem. in Supp. of Mot. in Limine 11.)  Such matters of causation do necessitate expert testimony.  *See, e.g.*, *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 821 (N.D. Ill. 2010).  In this case, however, that avenue is closed because Coleman never disclosed any expert witnesses under Federal Rule of Civil Procedure 26(a)(2), and the time to do so has now passed.  *Brown v. City of Fort Wayne*, No. 1:09-cv-150, 2011 WL 2690470, at *4 (N.D. Ind. July 11, 2011); *see* FED. R. CIV. P. 26(a)(2)(D).  Defendants further argue that, under Federal Rules of Evidence 403, 701, and 702, testimony from Coleman or any other lay witness about the causation of Coleman's alleged physical injury or mental illness is beyond his, or their, knowledge and qualifications.  (Defs.' Mem. in Supp. of Mot. in Limine 12.)  Additionally, and for essentially the same reasons, Defendants seek to exclude any medical records or bills and any testimony about them.  (Defs.' Mem. in Supp. of Mot. in Limine 12.)  Nevertheless, they concede that Coleman may discuss "the symptoms he experienced at the time of the arrest."  (Defs.' Mem. in Supp. of Mot. in Limine 12.)

     Defendants correctly delineate the bounds of permissible testimony and evidence concerning causation.  Indeed, under Federal Rule of Evidence 701, a lay witness may offer opinion testimony to the extent that it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  FED. R. EVID. 701.  Therefore, a lay witness is entitled to testify about his "own perceptions, including the physical and emotional effects of the defendants' alleged conduct."  *Christmas*, 691 F. Supp. 2d at 821.  He "cannot, however, offer medical opinions that require scientific, technical, or other specialized knowledge," "give any complex medical diagnoses or opine on any long term medical conditions."  *Id.* (citation and internal quotation marks omitted).

10

Consequently, as discussed above, Coleman may testify about his own perception of his physical and mental health, before and after the incident, which includes recounting any pain, fear, or anxiety he experienced during those times. *See Hendrickson*, 589 F.3d at 893; *Cravens*, 275 F.3d at 640; *Asplundh Mfg. Div.*, 57 F.3d at 1196-98; *Holleman*, 700 F.2d at 395.

No witness, however, shall be permitted to opine that the arrest proximately caused Coleman's mental and physical health problems or offer a medical diagnosis of his alleged injuries. *Cravens*, 275 F.3d at 641 ("Although a lay person may readily observe a [health] problem, the *causation* of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision."); *see also Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) (holding that lay testimony is not sufficient to establish plaintiff's claim that secondhand smoke caused his symptoms). Coleman can only lay the groundwork for the jury to infer causation by testifying about his present health conditions and whether they appeared prior to the incident. *Hendrickson*, 589 F.3d at 892-93 (plaintiff may describe the altercation and any ensuing pain or suffering he experienced at that time). Accordingly, the Defendants' motion with respect to evidence or testimony addressing the causation of Coleman's alleged injuries is GRANTED.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion *in limine* (Docket # 40) and Defendants' motion *in limine* (Docket # 28) are GRANTED IN PART and DENIED IN PART as set forth herein. It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or otherwise, without first obtaining permission of the Court

outside the presence or hearing of the jury. Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for the 6th day of March, 2012.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge